UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARY WEBB, and GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER,<br><br>    Plaintiffs,<br><br>    v.<br><br>DICKIE BRENNAN AND COMPANY, LLC; SEVEN SIXTEEN IBERVILLE, LLC; BRASSERIE, LLC; RICHARD BRENNAN, JR.; STEVEN PETTUS; and LAUREN BRENNAN BROWER,<br><br>    Defendants. | **COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Civil Action No. _____ |

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

**NATURE OF THE ACTION**

1.   This action is brought pursuant to 42 U.S.C. § 1981 and La. Rev. Stat. Ann. § 51:2247 by Mary Webb and the Greater New Orleans Fair Housing Action Center ("GNOFHAC") against Dickie Brennan and Company, LLC; Seven Sixteen Iberville, LLC; Brasserie, LLC; Richard Brennan, Jr.; Steven Pettus; and Lauren Brennan Brower for race discrimination in public accommodation.

2.   Each year, over Thanksgiving weekend, the City of New Orleans hosts the Bayou Classic, a multi-day event centered around a football game between two historically black universities ("HBCUs") in Louisiana: Southern University and Grambling State University. For many African Americans and African-American families, the Bayou Classic is a time-honored tradition and opportunity for reunion. The Bayou Classic brings over 60,000 individuals to the City of New Orleans annually.

3. During the Bayou Classic weekend, three French Quarter restaurants owned, operated, and managed by Defendants—Dickie Brennan's Steakhouse, Bourbon House, and Palace Café—close their doors to the public because of the predominantly African-American racial composition of the attendees of the Bayou Classic weekend.

4. Defendants' decision to close their doors during the Bayou Classic weekend adversely affects the experience of Bayou Classic attendees, the overwhelming majority of whom are African American. Dickie Brennan's Steakhouse, Bourbon House, and Palace Café are well-known and well-regarded New Orleans institutions, each with a reputation for providing a high-class experience to its customers. Moreover, they are situated in the heart of the French Quarter in areas of extremely high foot traffic, so that their shuttered doors are visible to the thousands walking by.

5. Defendants' actions during the Bayou Classic weekend stand in stark contrast to their behavior during the Allstate Sugar Bowl weekend, another popular football-centered event held on a holiday in New Orleans. Throughout the entire weekend of the Sugar Bowl, as well as during other well-attended events such as Mardi Gras, Defendants kept their restaurants open to the public.

6. The only appreciable differences between Bayou Classic and the Sugar Bowl are that the majority of attendees of Bayou Classic are African American while the majority of attendees of the Sugar Bowl are not, and that the three restaurants close during the weekend attended mostly by African American individuals and not the weekend attended mostly by white individuals.

7. Plaintiff Mary Webb is an African-American individual who attempted to take her family to dine at Defendants' restaurants but could not because they were closed. Plaintiff

GNOFHAC is a civil rights organization who investigated the closure of Defendants' restaurants and whose mission has been frustrated by Defendants' discriminatory behavior.

8. Defendants' decision to close their doors during the Bayou Classic weekend has had the purpose and effect of depriving Plaintiffs of their rights under federal and state law. Accordingly, Plaintiffs seek declaratory and injunctive relief as well as compensatory and punitive damages stemming from Defendants' violations of 42 U.S.C. § 1981 and La. Rev. Stat. Ann. § 51:2247.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a) and 1367.

10. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claims occurred in this district. Venue is also proper because all Plaintiffs and Defendants are domiciled in the state of Louisiana.

## PARTIES

A.  **Plaintiffs**

11. The Greater New Orleans Fair Housing Action Center ("GNOFHAC") is a private nonprofit civil rights organization organized under the laws of Louisiana and registered to do business in Louisiana.

12. For more than 20 years, GNOFHAC has been dedicated to eradicating discrimination throughout the state of Louisiana. GNOFHAC has been responsible for fighting discrimination that has arisen in the wake of Hurricane Katrina and, in recent years, from the effects of the economic recession. One of GNOFHAC's goals is the elimination of racial barriers that deprive African-American citizens of the privileges and burdens of equal civil and

3

constitutional rights in the United States, including the eradication of discrimination in places of public accommodations.

13.     Mary Webb is an African-American citizen who resides in New Orleans, Louisiana.

14.     On the afternoon of November 28, 2015, Ms. Webb visited Dickie Brennan's Steakhouse and Palace Café with the intent to contract with Defendants to purchase food and beverage from those restaurants. Ms. Webb was denied service at both restaurants.

**B.      Defendants**

15.     Dickie Brennan and Company, LLC ("DBC") is a limited liability company that is domiciled at 605 Canal Street in New Orleans, Louisiana. Its officers are Richard J. Brennan, Jr., Steven Pettus, and Lauren Brennan Brower. DBC is authorized to conduct business in the state of Louisiana.

16.     DBC is the owner and management company of Dickie Brennan's Steakhouse, Bourbon House, and Palace Café, three restaurants located in the French Quarter of New Orleans, Louisiana. Dickie Brennan's Steakhouse, Bourbon House, and Palace Café are places of public accommodation that affect interstate commerce in that they sell food and beverage that are available to the general public, including members of the public who travel to New Orleans from out of state.

17.     Seven Sixteen Iberville, LLC d/b/a Dickie Brennan's Steakhouse is a restaurant located 716 Iberville Street in New Orleans, Louisiana. It is a limited liability company with a domicile of the same address. Its officers are Richard Brennan, Jr., Steven Pettus, and Lauren Brennan Brower. Seven Sixteen Iberville, LLC is authorized to conduct business in the state of Louisiana.

18. Brasserie, LLC is a limited liability company that owns the service mark for Bourbon House. It is domiciled at 605 Canal Street in New Orleans, Louisiana. Its officers are Richard J. Brennan, Jr., Steven Pettus, and Lauren Brennan Brower. Brasserie, LLC is authorized to conduct business in the state of Louisiana.

19. Richard Brennan, Jr. is the co-owner and managing partner of Dickie Brennan's Steakhouse, Bourbon House, and Palace Café. He is an individual who resides in the state of Louisiana.

20. Steven Pettus is the co-owner and managing partner of Dickie Brennan's Steakhouse, Bourbon House, and Palace Café. He is an individual who resides in the state of Louisiana.

21. Lauren Brennan Brower is the co-owner and managing partner of Dickie Brennan's Steakhouse, Bourbon House, and Palace Café. She is an individual who resides in the state of Louisiana.

22. As owners, operators, and/or managers of Dickie Brennan's Steakhouse, Bourbon House, and Palace Café, Defendants and/or their agents and employees exercise control over the practices and policies of those restaurants, including those set forth below.

## FACTUAL BACKGROUND

A. **Public Accommodations and the Civil Rights Act**

23. Restaurants, motels, and other places of public accommodation feature prominently throughout the course of the civil rights movement. From the diner counter sit-ins of the 1960s to today, the refusal to serve African Americans at restaurants has been a frequent theme in American history.

24. One particularly malicious form of discrimination too frequently exercised by operators of public accommodations is to close their doors or otherwise institute highly restrictive policies during events that cater primarily to African Americans.

25. In the early 2000s, for example, multiple places of public accommodation were sued for the discriminatory provision of services during "Black Bike Week" in Myrtle Beach, South Carolina. Many establishments closed during Black Bike Week but not Harley Week, a comparable event attended mostly by white individuals.

26. A similar problem was observed in Daytona Beach, Florida, during "Black College Reunion," a homecoming event for students and alumni of two historically black Florida colleges, Bethune-Cookman College and Florida A&M University. During the reunion weekend, a Daytona Beach hotel required African-American guests to pre-pay for their hotel rooms in full and to wear bright orange identification wristbands; they were also charged higher rates than those offered during other special event weekends.

27. When discriminatory policies are adopted by a group of establishments within the same city during an event attended by predominantly African Americans, these actions have the intent and effect of discouraging African Americans from attending the events or enjoying the services provided by those establishments when a smaller percentage of African Americans are visiting the city.

28. Such policies of exclusion run counter to businesses' profitmaking incentives as well as their obligations under the civil rights statutes to serve the public irrespective of race.

B.    **New Orleans is a Tourism-Based City that Caters to Sports and Music-Based Events and Festivals**

29. New Orleans' tourist industry is the economic backbone of the city. In 2013, nearly 10 million tourists visited New Orleans and spent over $6.5 billion during their stays.

30. In particular, one-third of the total revenue generated by the city's tourism industry comes from the city's restaurants. Tourists flock to New Orleans to enjoy the unique Creole and Cajun cuisines. Approximately 3,000 restaurants are located in New Orleans.

31. The French Quarter is the epicenter of the New Orleans tourism and dining industry. The French Quarter is known throughout the United States as a place to eat, drink, listen to music, and party. With hundreds of popular, heavily frequented restaurants in the neighborhood, the French Quarter is a significant part of New Orleans' restaurant industry.

32. New Orleans hosts many sporting events and festivals throughout the calendar year. These events often coincide with long weekends or national holidays. For example, on New Year's Day, New Orleans hosts the Allstate Sugar Bowl; in February, it celebrates Mardi Gras; over the Independence Day weekend, it hosts the Essence Music Festival; over Halloween, it hosts the Voodoo Music and Arts Experience; and over Thanksgiving, it hosts the Bayou Classic.

33. Two weekends involving football-related festivities are Bayou Classic, which features a football game that is attended by a predominantly African-American crowd, and the Allstate Sugar Bowl, which features a football game that is attended by a predominantly white crowd.

      a. **The Bayou Classic**

34. The Bayou Classic is an annual part-festival, part-football event that has been held in New Orleans since the early 1970s.

35. The Bayou Classic football game features two historically black universities in Louisiana, Southern University and Grambling State University. Southern University is located in Baton Rouge, Louisiana, and Grambling State is located in Grambling, Louisiana. The fierce rivalry between Southern and Grambling dates back to the 1930s, and the annual football

game is an opportunity for students and alumni of those HBCUs to come together to compete and to enjoy each other's social company.

36. The Classic, however, isn't just a football game. It has been described as a multi-day "extravaganza, where the HBCU community congregates in the name of football, common culture, music, and most important, tradition." The Classic is an opportunity to showcase and celebrate "racial and athletic pride," tradition, heritage, and a sense of "togetherness."

37. For example, the Bayou Classic kicks off with career fairs and college expos as well as summits regarding African-American economic and business development. The weekend features a Thanksgiving Day parade, a Greek Step Show competition, vendor displays, and the famous Battle of the Bands between the schools' marching bands.

38. In 1990, the game moved to the New Orleans Superdome, where it has played each year except 2005. Dottie Belletto, President of the Orleans Convention Company, Inc., credits the Bayou Classic as "one of the three pillars that built what the Superdome is known for today."

39. Indeed, the Bayou Classic weekend is a large source of tourism and revenue for New Orleans. The game attracts thousands of students and alumni from outside of New Orleans. In 2014, approximately 60,000 people attended the game. Mark Roming, President and CEO of the New Orleans Tourism and Marketing Corporation, touted the importance of the Bayou Classic to New Orleans economy, claiming that it is "one of the major kick off events for our holiday season."

40. The dates of the past three Bayou Classics have been: November 30, 2013; November 29, 2014; and November 28, 2015.

41. The attendees of the Bayou Classic weekend are overwhelmingly African-American.

42. The student body of the two HBCUs featured in the Bayou Classic is also overwhelmingly African American. Southern University's student body is 92% African American. Grambling is 91% African American.

### b. The Sugar Bowl

43. On New Year's Day, New Orleans hosts another annual college football competition: the Sugar Bowl. In 2006, Allstate Insurance became a title sponsor of the event, and the game changed its official name to the Allstate Sugar Bowl.

44. Unlike the Bayou Classic, which always features Southern and Grambling, Sugar Bowl competitors are selected based on rankings among NCAA Division I football teams.

45. The past four Sugar Bowls have featured the following match-ups: University of Louisville versus University of Florida (2013); University of Oklahoma versus University of Alabama (2014); Ohio State University versus University of Alabama (2015); and University of Mississippi versus Oklahoma State University (2016).

46. In 2016, the Sugar Bowl attracted 72,117 fans, 40,000 of whom were from outside the New Orleans area.

47. The Sugar Bowl's history is inextricably linked with segregation and racial discrimination. Until the 1950s, Bowl organizers refused to allow African-American players to participate. White Southerners demanded that visiting teams from the North conform to Jim Crow segregation laws and refused to allow teams to field African Americans. If a northern team included African-American players on its roster, Bowl organizers forced the team to agree to withhold them from the contest.

48.     In 1956, after the Bowl featured its first-ever integrated team, University of Pittsburgh, the state legislature passed legislation to re-segregate the Sugar Bowl. The Sugar Bowl remained a segregated event until the Supreme Court struck down segregation laws in sports in 1958 and segregated seating laws in 1964.

49.     However, integration on the field did not end racial controversy surrounding the Sugar Bowl. In 1972, University of Oklahoma players complained that African-American women were largely excluded from the social events held for the teams. In 1973, a New Orleans civil rights group threatened to picket the game unless the Mid-Winter Sports Association diversified its leadership.

50.     Indeed, the Sugar Bowl continues to draw a noticeably different demographic to the New Orleans than the Bayou Classic. Of the five teams that have competed most frequently—University of Georgia, University of Florida, University of Mississippi, University of Alabama, and Louisiana State University—all except the University of Florida have a student body that is over 70% white. Black or African-American students represent less than 15% of the student body at each of the five schools.

51.     In contrast to attendees of the Bayou Classic weekend, the attendees of the Sugar Bowl are predominately white.

**C.      Defendants Were Closed During the Bayou Classic and Were Open During the Sugar Bowl**

52.     Dickie Brennan's Steakhouse, Bourbon House, and Palace Café are three well-known restaurants located in the heart of the French Quarter.

53.     Dickie Brennan's Steakhouse, located at 716 Iberville Street, New Orleans, LA, has been a French Quarter institution for over 60 years. Known for its upscale, white-

10

tablecloth service, the Steakhouse features six private rooms and a sweeping dining room and bar. It has been listed as one of the top 20 steakhouses in the United States.

54. Bourbon House, located at 144 Bourbon Street, New Orleans, LA, touts itself as New Orleans' premier oyster bar and seafood restaurant. On the corner of the popular intersection of Bourbon and Iberville Streets, Bourbon House serves classic Creole dishes and small batch bourbon.

55. Palace Café, located at 605 Canal Street, New Orleans, LA, in the historic Werlein's music building, is known for its contemporary Creole food. Since opening in 1991, Palace Café has won a number of local and national awards, including "Best New Restaurant" from *Esquire Magazine* and *USA Today*.

56. All three restaurants are located on some of the busiest streets in the French Quarter. On any given night—but especially when the city hosts a festival or football game—the streets are crowded with visitors and regulars looking for a place to eat, drink and socialize. Restaurants are often filled to capacity with people waiting in line for tables.

57. Nevertheless, guests seeking to purchase food and beverages at Dickie Brennan's Steakhouse, Bourbon House, and Palace Café during the Bayou Classic weekends of 2014 and 2015 were denied the ability to enjoy these privileges and services because these restaurants closed during the Bayou Classic weekends in those years.

58. Defendants' behavior stood in marked contrast to their behavior during the corresponding Sugar Bowls held less than two months later and on similar holiday weekends.

### a. Dickie Brennan's Steakhouse

59. Dickie Brennan's Steakhouse closed its doors to the public during the Bayou Classic weekend in both 2014 and 2015; however, it remained open during the entire duration of the Sugar Bowl weekends held just one month later.

60. During the 2014 Bayou Classic weekend, Dickie Brennan's Steakhouse was closed on Friday, November 28, 2014; was closed on Saturday, November 29, 2014; and was closed for most of the day on Sunday, November, 30, 2014.

61. In contrast, during the 2015 Sugar Bowl, Dickie Brennan's Steakhouse was open on Wednesday, December 31, 2014; was open on Thursday, January 1, 2015; and was open on Friday, January 2, 2015.

62. During the 2015 Bayou Classic weekend, Dickie Brennan's Steakhouse was closed on Friday, November 27, 2015; was closed on Saturday, November 28, 2015; and was closed on Sunday, November 29, 2015.

63. In contrast, during the 2016 Sugar Bowl weekend, Dickie Brennan's Steakhouse was open on Thursday, December 31, 2015; was open on Friday, January 1, 2016; and was open on Saturday, January 2, 2016.

### b. Bourbon House

64. Bourbon House closed its doors to the public during the Bayou Classic weekend in both 2014 and 2015; however, it remained open during the entire duration of the Sugar Bowl held just one month later.

65. During the 2014 Bayou Classic weekend, Bourbon House was closed on Saturday, November 29, 2014 and was closed on Sunday, November 30, 2014.

66. In contrast, during the 2015 Sugar Bowl, Bourbon House was open on Wednesday, December 31, 2014; was open on Thursday, January 1, 2015; and was open on Friday, January 2, 2015.

67. During the 2015 Bayou Classic weekend, Bourbon House was closed on Saturday, November 28, 2015 and was closed on Sunday, November 29, 2015.

68. In contrast, during the 2016 Sugar Bowl weekend, Bourbon House was open on Thursday, December 31, 2015; was open on Friday, January 1, 2016; and was open on Saturday, January 2, 2016.

### c. Palace Café

69. During the 2015 Bayou Classic weekend, Palace Café was closed on Friday, November 27, 2015; was closed on Saturday, November 28, 2015; and was closed on Sunday, November 29, 2015.

70. In contrast, during the 2016 Sugar Bowl weekend, Palace Café was open on Thursday, December 31, 2015; was open on Friday, January 1, 2016; and was open on Saturday, January 2, 2016.

71. Defendants' actions also stand in marked contrast with their actions during the largest annual New Orleans event, Mardi Gras. Dickie Brennan's Steakhouse and Bourbon House stayed open during the entirety of Mardi Gras weekend in 2015 (February 13 through 15).

72. Notably, in 2015, Dickie Brennan's Steakhouse and Bourbon House both remained open on Thanksgiving Day, but then closed their doors on the immediate Saturday following Thanksgiving (the day of the Bayou Classic football game).

73. Defendants have maintained discriminatory practices and policies that are intended to discriminate against Bayou Classic attendees, who are predominantly African American.

74. Defendants' decision to close Dickie Brennan's Steakhouse, Bourbon House, and Palace Café during the Bayou Classic—in contrast to their decision to keep the restaurants open during the Sugar Bowl—was made on the basis of the race of the attendees of the annual event.

75. Defendants' discriminatory practices and policies also have the effect of discriminating against Bayou Classic attendees, who are predominantly African American.

76. Upon information and belief, the discriminatory policies and practices of Defendants have been carried out under the direction, and with the full knowledge and consent, of its owners and managers. The agents and employees who have carried out the discriminatory policies and practices have been acting within the scope of their regular authority as agents and employees.

77. All three restaurants are well-regarded and well-respected in the New Orleans dining scene. Defendants' choice to implement a policy of discrimination encourages similar conduct by other entities, thereby amplifying the harm of the discrimination.

**D.     Plaintiff Mary Webb**

78. Mary Webb is an African-American resident of New Orleans, Louisiana. Ms. Webb, who was born and raised in New Orleans, is a middle school teacher.

79. On November 28, 2015, Ms. Webb attended the Bayou Classic festivities along with her mother and her 7-year old daughter. Ms. Webb had visited the Bayou Classic

14

festivities many times in the past. Ms. Webb attended the Bayou Classic in 2015 in part as her role as a volunteer investigator for GNOFHAC.

80. On November 28, 2015, Ms. Webb and her family attempted to dine at Palace Café and Dickie Brennan's Steakhouse with the intent to purchase food and beverages.

81. Ms. Webb had frequented both establishments in the past, including Dickie Brennan's Steakhouse the previous year and Palace Café sometime before that. She looked forward to being able to once again enjoy one of the restaurants with her family during Bayou Classic.

82. However, Ms. Webb and her family were unable to purchase food and drink from Palace Café and Dickie Brennan's Steakhouse because both restaurants were closed.

83. Ms. Webb believed that both restaurants were closed during the Bayou Classic because of the race of the attendees. Ms. Webb had numerous conversations with her mother, daughter, and others about Defendants' discrimination.

84. As a result of Defendants' discrimination, Ms. Webb purchased food and beverages at another restaurant in the French Quarter that remained open.

85. As a direct and proximate result of Defendants' discriminatory practices described above, Mary Webb has suffered and will continue to suffer great irreparable loss and injury including but not limited to humiliation, embarrassment, emotional distress, mental anguish, and a deprivation of the rights to make and enforce contracts on the same basis as a white person.

E.     **Plaintiff GNOFHAC**

86. GNOFHAC has received multiple complaints from New Orleans visitors and residents regarding discrimination against African-American visitors to French Quarter

restaurants during Bayou Classic and other festivals attended by predominantly African-American individuals.

87. In response to those complaints, GNOFHAC began monitoring and investigating the treatment of African Americans in the New Orleans area during Bayou Classic and other such events. GNOFHAC also monitored the treatment of African Americans during predominantly white events, such as the Sugar Bowl, as a means to compare treatment of similar individuals during similar events with crowds of significantly different racial compositions.

88. GNOFHAC's investigation and monitoring have continued through the present. Defendants' actions have required, and will require, GNOFHAC to spend additional resources to counteract Defendants' discriminatory conduct.

89. As a direct and proximate result of Defendants' discriminatory practices, GNOFHAC has suffered and will continue to suffer a diversion of its resources and a frustration of its mission.

90. GNOFHAC has been damaged by having to divert scarce resources to identify and investigate Defendant's discriminatory practices. GNOFHAC launched an investigation into the actions of these restaurants during four annual weekend events and festivals, including Bayou Classic and the Sugar Bowl. The investigation required GNOFHAC to expend staff time and incur expenses, including but not limited to: (1) monitoring and investigating the actions of New Orleans restaurants during four weekends; (2) analyzing the testing results; (3) utilizing professional and administrative support as well as volunteer time; and (4) paying for out-of-pocket expenditures that resulted from the investigation.

91. If Defendants had not engaged in this discrimination, GNOFHAC would have spent those resources on other activities consonant with its mission, including testing

investigations of lending institutions, testing investigations of housing providers suspected of discrimination, a testing audit regarding discrimination against LGBT individuals, and more.

92. Defendants' actions have also frustrated the mission and purpose of GNOFHAC. Part of GNOFHAC's mission is to fight segregation, ignorance, fear and hatred by working to eradicate housing and public accommodation discrimination throughout the state of Louisiana. Defendants' practice of closing during predominantly African-American weekend festivals directly impedes GNOFHAC's efforts—both in educating the public on their public accommodation rights and also in preventing discriminatory decision-making by public accommodation providers.

## CAUSES OF ACTION

### Count I
### 42 U.S.C. § 1981 (Plaintiff Mary Webb)

93. Plaintiffs reallege and incorporate by reference all of the allegations set forth in Paragraphs 1 through 92 above.

94. Plaintiff Mary Webb is African American. Ms. Webb met Defendants' standard requirements for dining in their restaurants.

95. Plaintiff Mary Webb sought to enter into a contract with Defendants to enjoy their services.

96. Defendants' actions as described above have denied Plaintiff Mary Webb the rights that are available to guests outside the protected class. Defendants' conduct constitutes a deprivation of the right to make and enforce contracts as is enjoyed by white citizens of the United States, including the making, performance, and modification of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship in violation of 42 U.S.C. § 1981.

## Count II
### LA. Rev. Stat. Ann. § 51:2247 (Mary Webb and GNOFHAC)

97. Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 92 above.

98. Defendants' actions as described above have and have had the purpose and effect of denying Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendants on the basis of race in violation of La. Rev. Stat. Ann. § 51:2247.

99. Defendants' actions, including their policy to close during the Bayou Classic weekend, have had an adverse impact on the ability of African Americans to engage in a full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendants on the basis of race in violation of La. Rev. Stat. Ann. § 51:2247.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

1. enter a declaratory judgment finding that the actions of Defendants alleged in this Complaint violated 42 U.S.C. § 1981 and La. Rev. Stat. Ann. § 51:2247;

2. enter a permanent injunction barring Defendants from continuing to engage in the illegally discriminatory conduct alleged in this Complaint;

3. enter a permanent injunction directing that Defendants take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

4. award compensatory damages to each Plaintiff in an amount that would fully compensate Plaintiffs for the humiliation, embarrassment, emotional distress, mental anguish,

diversion of resources, frustration of mission, and out-of-pocket costs caused by Defendants' conduct as alleged herein;

     5. award punitive damages in an amount that would punish Defendants for the willful, wanton and reckless misconduct alleged in this Complaint and that would effectively deter Defendants from future discriminatory behavior;

     6. award Plaintiffs their reasonable attorneys' fees and costs; and

     7. order all other relief deemed just and equitable by this Court.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a jury trial on all claims so triable as of right.

Dated: November 22, 2016

Respectfully submitted,

| | |
|---|---|
| /s/ | |
| _____ | _____ |
| Alexander Sascha Bollag | Reed N. Colfax (T.A.) (Motion for admission *pro hac vice* to be filed) |
| Attorney ID No. 34447 | |
| Elizabeth Owen | Tara K. Ramchandani (Motion for admission *pro hac vice* to be filed) |
| Attorney ID No. 33620 | |
| GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER | Yiyang Wu (Motion for admission *pro hac vice* to be filed) |
| 404 S. Jefferson Davis Pkwy | RELMAN, DANE & COLFAX PLLC |
| New Orleans, LA 70119 | 1225 19th Street NW, Suite 600 |
| Tel: 504-596-2100 | Washington, DC 20036 |
| Fax: 504-602-9857 | Tel: 202-728-1888 |
| E-mail: sbollag@gnofairhousing.org | Fax: 202-728-0848 |
|     eowen@gnofairhousing.org | E-mail: rcolfax@relmanlaw.com |
| |     tramchandani@relmanlaw.com |
| |     ywu@relmanlaw.com |

*Attorneys for Plaintiffs Mary Webb and Greater New Orleans Fair Housing Action Center*